1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   TYREN LAVAR SEABROOKS,            CASE NO. ED CV 17-0467 SS

12                    Plaintiff,

13        v.                           **MEMORANDUM DECISION AND ORDER**

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                    Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21        Tyren  Lavar  Seabrooks  ("Plaintiff")  brings  this  action

22   seeking  to  overturn  the  decision  of  the  Acting  Commissioner  of

23   Social  Security  (the  "Commissioner"  or  "Agency")  denying  his

24   applications  for  Disability  Insurance  Benefits  ("DIB")  and

25   Supplemental  Security  Income  ("SSI").   The  parties  consented,

26   pursuant  to  28  U.S.C.  §  636(c),  to  the  jurisdiction  of  the

27   undersigned  United  States  Magistrate  Judge.  (Dkt.  Nos.  11,  12,

13).  For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

<h2 style="text-align:center">II.</h2>

<h3 style="text-align:center">PROCEDURAL HISTORY</h3>

On April 18, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, alleging a disability onset date of January 1, 2009.  (AR 111-13).  On July 25, 2012, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, also alleging a disability onset date of January 1, 2009.  (AR 165-66).  The Commissioner denied Plaintiff's applications initially and on reconsideration. (AR 43-62, 64-68, 77-81).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR 82-84), which took place on July 21, 2014, and March 9, 2015 (AR 1280-338).[1]  The ALJ issued an adverse decision on June 25, 2015, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that he can perform. (AR 15-26).  On January 12, 2017, the Appeals Council denied Plaintiff's request for review.  (AR 5-7).  This action followed on March 13, 2017.

---

[1] After the first hearing, the record was held open for interrogatories from the medical experts ("MEs"), which were provided in September 2014. (AR 15).  Because the prior ALJ left the Agency and became unavailable, the case was assigned to a new ALJ, who held a supplemental hearing on March 9, 2015.  (AR 15).

Plaintiff was born on February 19, 1977. (AR 111, 1303). He was thirty-seven (37) years old when he appeared before the ALJ on July 21, 2014. (AR 1293). Plaintiff has a high-school degree. (AR 1303). He is divorced with two daughters. (AR 1301-02). Plaintiff previously worked as a truck driver, working up to fourteen hours a day, six days a week, and lifting up to fifty pounds. (AR 125-26). He alleges disability due to right shoulder rotator cuff surgeries, right knee surgery, lower back and neck pain, depression and anger issues. (AR 115).

**A.** **Plaintiff's Testimony**

At the July 2014 hearing, Plaintiff testified that he cannot work due to pain in his right shoulder, both knees, right hip and lower back, along with chronic migraines throughout the day. (AR 1312). His medications alleviate the pain but make him groggy. (AR 1307-08, 1315-16). He denied using any drugs since 2002. (AR 1311-12).

Plaintiff testified that he can walk only a block or two before needing to rest for a minute or two. (AR 1317). His knees sometimes "give out" so he needs to move them up and down to keep them from locking. (AR 1310, 1318). He estimated that he can lift only a quart of milk with his upper right extremity. (AR 1325).

At the March 2015 hearing, Plaintiff testified that his right shoulder "pops out of place" whenever he tries to reach for anything. (AR 1286). He denied any problems with standing or walking. (AR 1286). He denied riding a bicycle since he fell and broke his elbow. (AR 1287). His pain medications help for a few hours before needing to take them again. (AR 1288).

**B.    <u>Treatment History</u>**

Plaintiff sustained work-related injuries in June 2007, when the front-end loader he was operating fell around twenty feet. (AR 1132). He complained of pain in his right shoulder, neck, right hip, right knee and lower back. (AR 1132). He was treated for sprains and strains. (AR 1132). After his injury, he worked for Viola Services "in a relatively light job" at a refinery, requiring some bending and lifting. (AR 1132). He continued to have pain in his right shoulder, right hip and right knee. (AR 1132). A June 2008 MRI of the cervical spine revealed only mild degenerative changes at C5-6 and C6-7. (AR 214). Plaintiff worked at the refinery until July 2009 when he left to have abdominal surgery. (AR 1133).

On July 15, 2012, Richard J. Palmer, Ph.D., performed a comprehensive psychiatric evaluation on behalf of the Agency. (AR 627-32). While Plaintiff ambulated without assistance, his movements were slow, stiff and apparently painful. (AR 627). He denied current drug and alcohol abuse and dependency issues. (AR 628). He acknowledged being in drug rehabilitation in 2002 but

4

claimed that he has been "clean" and "rarely" drinks alcohol since that time. (AR 628). Plaintiff acknowledged being able to perform basic activities of daily living independently, including household tasks, cooking and shopping. (AR 629). He spends the day walking and exercising his injured areas. (AR 629). Dr. Palmer diagnosed major depressive disorder and adjustment disorder with anxiety. (AR 630). He opined that Plaintiff is able to perform simple, repetitive tasks, accept instructions from supervisors and interact with coworkers and the public. (AR 631). Plaintiff is mildly limited in his ability to maintain regular attendance, complete a normal workday without psychiatric interruptions and handle normal work-related stresses. (AR 631).

On July 28, 2012, David Hoenig, M.D., performed a comprehensive orthopedic examination on behalf of the Agency. (AR 634-37). Plaintiff complained of right shoulder pain. (AR 634). On examination, Plaintiff ambulated with a normal gait and without assistance. (AR 635). He was able to sit comfortably and get on and off the examination table without difficulty. (AR 635). A physical examination was largely unremarkable. (AR 636). Dr. Hoenig opined that Plaintiff can lift and carry twenty-five pounds occasionally, secondary to reduced range of motion in his right shoulder. (AR 637).

On June 18, 2013, Plaintiff was riding his bicycle around fifty miles per hour when he fell over his handlebars, fracturing his left elbow. (AR 965).

On January 4, 2014, Plaintiff presented to the emergency room, complaining of a severe headache. (AR 885). He reported starting an exercise program, riding his bicycle for several miles, several times a week. (AR 886). A physical examination was largely unremarkable. (AR 886-87). He was diagnosed with acute viral syndrome, chest pain, headache with acute exacerbation of underlying tension headaches, and a history of pituitary adenoma. (AR 887).

On January 16, 2014, x-rays of Plaintiff's right knee were essentially normal. (AR 830). X-rays of the right shoulder revealed multiple ossicles in the soft tissues adjacent to the acromioclavicular joint, which had increased since June 2012. (AR 831). Plaintiff tested positive for cocaine and marijuana. (AR 1206).

On July 16, 2014, Plaintiff presented with flank pain. (AR 1221). He reported that he continues to ride his bicycle and lift weights. (AR 1221). He was diagnosed with acute musculoskeletal flank pain, chronic kidney disease and history of pituitary tumor treated medically. (AR 1222).

On August 4, 2014, Andrew K. Burt, M.D., an orthopedic surgeon, performed an orthopedic social security disability evaluation at the request of Plaintiff's non-attorney representative. (AR 1132-41). Dr. Burt obtained a medical history from Plaintiff and reviewed some medical records. (AR 1134-36). Dr. Burt performed an orthopedic examination, limited to

Plaintiff's right shoulder, right knee and right hip. (AR 1137). Dr. Burt found limited range of motion in Plaintiff's right shoulder, i.e., forward flexion was limited to seventy degrees, posterior extension limited to thirty degrees, abduction limited to forty degrees and adduction limited to twenty degrees. (AR 1137). Plaintiff complained of pain at the extremes of motion. (AR 1137). Dr. Burt diagnosed postoperative status right shoulder surgery, residual right shoulder loss of motion and pain due to rotator cuff injury and subsequent surgical distal clavicle excision, posttraumatic trochanteric bursitis of the right hip, posttraumatic degenerative osteoarthritis of the right knee and status post arthroscopic right knee with residual. (AR 1139). Dr. Burt opined that Plaintiff cannot perform heavy physical activity and is limited in his ability to sit, stand and walk. (AR 1141).

On November 7, 2014, Plaintiff reported temporary relief of his right shoulder and right knee pain with injections of Kenalog and Marcaine. (AR 1159). Eric S. Schmidt, M.D., advised Plaintiff to intensify his home exercise program for his right shoulder emphasizing scapular stabilization exercises, progressive rotator cuff strengthening and capsular stretches. (AR 1160). He also advised Plaintiff to continue to use his exercise bicycle to strengthen his right knee. (AR 1160). Dr. Schmidt prescribed Anaprox (naproxen) and referred Plaintiff for physical therapy. (AR 1160).

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,

240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE").  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 26).  At step one, the ALJ found that Plaintiff met the insured status requirements through March 31, 2014, and had not engaged in substantial gainful activity since January 1, 2009, the alleged disability onset date.  (AR 18).  At step two, the ALJ found that Plaintiff's right shoulder impairment, status-post surgeries on June 28, 2009, July 19, 2011, and September 4, 2012; right knee impairment, status-post surgery on September 7, 2010; osteoarthritis; obesity and affective disorders are severe impairments.  (AR 18).  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.  (AR 19-20).

The ALJ evaluated Plaintiff's credibility and rejected the degree of pain and limitation asserted by Plaintiff.  Among other factors, the ALJ noted that Plaintiff's statements regarding his

prior drug use (Plaintiff stated that he was drug-free since 2002) were undermined by a positive drug test for cocaine and marijuana in 2014; by a State Agency analysis noting polysubstance abuse in 2009, and an observation by Dr. Hasan in 2009 that Plaintiff had a history of chemical dependence (alcohol and cocaine). (AR 22). The ALJ also noted that the State Agency found Plaintiff had an RFC for medium work. (AR 21).

The ALJ assessed Plaintiff's RFC and concluded that he can perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[2] (AR 20). "He is able to perform at least simple repetitive tasks equating to unskilled work." (AR 20). The ALJ also noted that Plaintiff's "limitation to unskilled work . . . is not determinative in this case, as [Plaintiff] is not considered disabled if able to perform unskilled light or sedentary work." (AR 20). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 24-25). Utilizing the grids and considering Plaintiff's age, education, work experience and RFC, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 25-26). Accordingly, the ALJ found that Plaintiff was not under a

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

disability as defined by the Social Security Act from January 1, 2009, through the date of the ALJ's decision. (AR 26).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

In his opening brief, Plaintiff contends that the ALJ erred for the following two reasons: (1) the ALJ erred in rejecting Plaintiff's testimony regarding his subjective symptoms and functional limitations; and (2) the ALJ failed to properly evaluate Dr. Burt's opinion regarding Plaintiff's right shoulder limitations. (Dkt. No. 17 at 2-9).

Plaintiff vigorously argued in his opening brief that the ALJ erred in rejecting his subjective statements. (Dkt. No. 17 at 2-6). However, after Defendant filed her response brief, Plaintiff expressly "withdr[e]w his first argument regarding the ALJ's evaluation of [his] testimony." (Dkt. No. 23 at 3). Nevertheless, in reaching his opinion, Dr. Burt relied in part on the reliability of Plaintiff's subjective statements. The ALJ's evaluation of Plaintiff's credibility is therefore vital to the Court's assessment of Plaintiff's second argument, i.e., whether the ALJ properly evaluated Dr. Burt's opinion regarding Plaintiff's right shoulder limitations. As such, the Court will evaluate the ALJ's credibility determination prior to addressing the ALJ's analysis of Dr. Burt's opinion.

## A. The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing

Plaintiff asserted that he is unable to work because he is in constant pain. (AR 1312). He experiences residual headaches from his pituitary tumors. (AR 1318). His pain medications cause him to be groggy during the day. (AR 1307-08). He can walk only one or two blocks before needing to stop and rest. (AR 1317). He estimated that he can lift only a quart of milk with his upper right extremity. (AR 1325).

### 1. Standards

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**2. Factors Supporting The ALJ's Adverse Credibility Determination**

The ALJ provided two specific, clear and convincing reasons to find Plaintiff's complaints of debilitating pain not entirely credible. (AR 20-24). These reasons are sufficient to support the Commissioner's decision.

    **a. Plaintiff's Testimony Was Inconsistent With His Reported Activities**

The ALJ found Plaintiff not entirely credible because his reported symptoms were inconsistent with his acknowledged activities. (AR 21-22, 24); see <u>Bray</u>, 554 F.3d at 1227 ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). When asked by the ALJ about references to bicycling in the record, Plaintiff testified that it was "just something he was trying out" and that he had not ridden a bicycle since he fell off his bicycle and broke his elbow in June 2013. (AR 21, 965, 1287). However, as the ALJ noted, the medical record indicates that in January 2014, Plaintiff had started an exercise program, riding his bicycle for several miles, several times a week. (AR 21, 886). Further, in July 2014, Plaintiff reported that he continues to ride his bicycle and lift weights. (AR 21, 1221).

The ALJ also noted that Plaintiff told Dr. Burt that he had worked in a relatively light job at a refinery from 2007 through 2009. (AR 22, 1132). However, Plaintiff had previously reported that his job as a truck driver at the refinery involved working up to fourteen hours a day, six days a week, and required lifting up to fifty pounds. (AR 22, 125-26).

Additionally, Plaintiff told Dr. Palmer in July 2012 that he had a history of cocaine and alcohol abuse, but that after being in drug rehabilitation in 2002, he has been "clean" and "rarely" drinks alcohol. (AR 24, 628). Plaintiff testified in July 2014 that while he had used drugs and alcohol in the past, he had been clean and sober since 2002. (AR 1311-12). However, a drug test in January 2014 was positive for cocaine and marijuana. (AR 22, 1206).

Finally, Plaintiff acknowledged to Dr. Palmer that he was living alone and was able to independently perform basic activities of daily living, including household tasks, cooking and shopping. (AR 24, 629). Plaintiff also reporting spending his days walking and exercising. (AR 24, 629). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity

is inconsistent with the claimant's asserted limitations, it has a bearing on credibility.  <u>Garrison</u>, 759 F.3d at 1016.

The ALJ properly could find, on the basis of Plaintiff's reported activities, that his testimony regarding debilitating pain was not entirely credible.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (In evaluating a claimant's credibility, the ALJ may consider "inconsistencies either in claimant's testimony or between her testimony and her conduct.") (citation and alterations omitted).

> b.  Reported Symptoms Not Corroborated By Medical Record

The ALJ found Plaintiff not entirely credible because his reported symptoms were not corroborated by the medical evidence of record.  (AR 20-24).  The ALJ identified multiple medical records with sufficient specificity that contradicted Plaintiff's allegations of debilitating pain.

The ALJ noted that Plaintiff treated his shoulder and knee pain with injections, a home exercise program, an exercise bicycle and physical therapy.  (AR 23, 1159-60).  Plaintiff testified that his pain medications relieved his pain.   (AR 23, 1308).

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ properly considered evidence suggesting that claimant responded well to treatment in rejecting claimant's testimony.). The Ninth Circuit has also concluded that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); see Tommasetti, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22, 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

The ALJ also noted inconsistencies between Plaintiff's testimony and the objective medical evidence. (AR 20-24). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). January

2014 x-rays of Plaintiff's right knee were essentially normal and an MRI of the cervical spine in June 2008 indicated only mild degenerative changes. (AR 22, 214, 830). The July 2012 comprehensive orthopedic examination found that Plaintiff had no difficulty sitting, standing or walking. (AR 23, 634-37).

Plaintiff contends that the Court "should reject the ALJ's analysis of [Plaintiff's] testimony because the ALJ relied only on the medical evidence." (Dkt. No. 17 at 4). While the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations," Bray, 554 F.3d at 1227, the ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record," SSR 16-3p, at *5 (emphasis added). Here, the ALJ did not reject Plaintiff's subjective symptoms because of a lack of evidence to support Plaintiff's allegations. Instead, the ALJ discredited Plaintiff's statements because they are inconsistent with the medical signs and laboratory findings in the record. Further, as discussed above, the ALJ also found inconsistencies between Plaintiff's testimony and his conduct and daily activities. The ALJ properly could find, on the basis of Plaintiff's inconsistent and conservative treatment history, that Plaintiff's testimony regarding his debilitating pain was not entirely credible.

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings.

**B.    The ALJ Provided Specific And Legitimate Reasons For Rejecting Dr. Burt's Opinion**

Plaintiff contends that the ALJ failed to properly evaluate Dr. Burt's opinion regarding Plaintiff's right upper extremity limitations.  (Dkt. No. 17 at 6-9).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician.").  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss, 427 F.3d at 1216; see Lester, 81 F.3d at 830-31 ("And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.").  Further, when weighing conflicting medical opinions, an ALJ may reject an opinion that is

conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Dr. Burt examined Plaintiff on a referral from Plaintiff's non-attorney representative. (AR 1132-41). Dr. Burt opined that Plaintiff met listings 1.01 and 1.02, was limited to less than a full range of sedentary work, could not sit for six hours during the workday, and could not stand or walk for two hours during the workday. (AR 1140-41). The ALJ gave "little weight" to Dr. Burt's opinion "because it appears to have been based to a large degree on [Plaintiff's] subjective complaints and is not consistent with the weight of the additional medical evidence or the record as a whole." (AR 23). Plaintiff does not contest these findings. Instead, he argues that the ALJ ignored Dr. Burt's finding that Plaintiff "cannot use his right upper extremity away from his body," which Plaintiff interprets as "restrict[ing] [Plaintiff] from reaching with his right upper extremity." (Dkt. No. 17 at 6). However, Dr. Burt did not assess an upper right extremity limitation.

Dr. Burt noted Plaintiff's subjective complaints that he had right shoulder pain and could not use his right arm away from his body. (AR 1139-40). However, when Dr. Burt provided an opinion regarding Plaintiff's functional limitations, he merely concluded that Plaintiff could not perform heavy physical activity and was limited in his ability to sit, stand and walk. (AR 1141). Dr. Burt did not include any reaching limitations. (AR 1141).

Even if Dr. Burt had included a reaching limitation, the ALJ properly afforded the opinion little weight. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted). Dr. Burt was given only limited records to review and relied to a significant extent on Plaintiff's subjective statements. (AR 23, 1132-37, 1139-40). As discussed above, the ALJ's rejection of Plaintiff's subjective complaints was supported by substantial evidence, a conclusion that Plaintiff no longer contests.

Further, Dr. Burt's opinion was contradicted by Plaintiff's statements. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (physician's opinion may be rejected when it is inconsistent with the claimant's level of activity); Hensley v. Colvin, 600 F. App'x 526, 527 (9th Cir. 2015) ("ALJ reasonably determined that [the physician's] opinion was inconsistent with [the claimant's] reported daily activities, which included attending to personal care, cooking, cleaning, shopping for groceries, taking the bus and swimming for exercise."). Dr. Burt opined that Plaintiff could perform less than sedentary work, yet Plaintiff reported to Dr. Palmer that he was living alone and was able to independently perform basic activities of daily living and spent his days walking and exercising. (AR 24, 629). Less than a month prior to Dr. Burt's opinion, Plaintiff reported bicycling and lifting weights. (AR 21, 1221). Plaintiff also testified in March 2015 that he had

no problems standing or walking and could sit for a long period of time before needing to stretch his legs. (AR 21, 1286).

Dr. Burt's opinion that Plaintiff meets listings 1.01 and 1.02 was inconsistent with the medical record. As the ALJ noted, two MEs and the State Agency physicians all concluded that Plaintiff did not meet or equal a listing. (AR 23, 27-62, 1143, 1148).

Plaintiff contends that Dr. Hoenig's opinion supports a reaching limitation. (Dkt. No. 17 at 8-9). However, the ALJ found Dr. Hoenig's "assessment of reaching limitation on the right . . . not . . . to be supported by the record" (AR 23), a finding that Plaintiff does not directly contest. In any event, the ALJ limited Plaintiff to no more than light work, which "involves lifting no more than 20 pounds at a time," 20 C.F.R. §§ 404,1567(b), 416.967(b), "primarily [due to his] lifting limitations." (AR 21). Even if Plaintiff's right shoulder impairment precluded him from lifting no more than ten pounds at a time, he would still not be disabled. (AR 20) (ALJ noting that Plaintiff "is not considered disabled if able to perform unskilled light or sedentary work."); see 20 C.F.R. §§ 404,1567(a), 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . .").

In sum, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Burt's opinion little weight. Accordingly, because substantial evidence supports the ALJ's assessment of Dr. Burt's opinion, no remand is required.

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  January 18, 2018

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE